■ In the Matter of ERSKINE E. R. F. BROOKLYN HOME FOR CHILDREN, Appellant; ERSKINE M., Respondent. — In a proceeding pursuant to section 384-b (subd 4, pars [b], [d]) of the Social Services Law and article 6 of the Family Court Act to terminate the parental rights of respondent Erskine M., the petitioner appeals, as limited by its brief, from so much of an order of the Family Court, Queens County (Corrado, J.), dated August 8, 1983, as, after a hearing, dismissed the petition and denied petitioner's application for an order dispensing with the consent of Erskine M. to adoption of the subject child. Petitioner's notice of appeal from a decision of the same court, dated March 21, 1983, is deemed a premature notice of appeal from the order dated August 8, 1983 (Family Ct Act, § 1118; CPLR 5520, subd [c]). ¶ Order reversed insofar as appealed from, without costs or disbursements, petition reinstated, and matter remitted to the Family Court, Queens County, for a new hearing and determination before a different Judge, in accordance herewith. ¶ Petitioner, the Brooklyn Home for Children, an authorized foster care agency, initiated proceedings to permanently terminate the parental rights of respondent Erskine M., the putative father of the child, and Otis F., the husband of the child's natural mother. At a fact-finding hearing on both petitions, it was established that the child was born on February 11, 1974. He was placed in foster care by a voluntary agreement signed by his natural mother. On July 16, 1981, the natural mother signed a permanent surrender agreement, and a sworn statement naming Erskine M. as the father of the child. ¶ Respondent conceded that the natural mother was married to Otis F. at the time of the child's birth. However, he claimed that he cohabited with the child's mother from 1971 to 1978 or 1979, that the child is his son, and that he named the child after himself, his grandfather and his uncle. Although there is considerable evidence in the record indicating that respondent, and not the mother's husband, is the natural father of the child, we cannot say, based upon the present record, that his paternity was established by clear and convincing evidence. Respondent had the burden of overcoming the presumption of the child's legitimacy. That presumption may be overcome only by clear and convincing proof of illegitimacy (see *Matter of Irma N. v Carlos A. F.,* 46 AD2d 893; *Matter of Gray v Rose,* 32 AD2d 994). The presumption obtains even if the spouses are not living together "if there is a fair basis for the belief that at times they may have come together" (*Matter of Findlay,* 253 NY 1, 8; *Matter of Irma N. v Carlos A. F., supra*). Respondent failed to establish nonaccess by the

husband. "[A]ccess must be clearly and convincingly negated, in the absence of proof of barriers to access arising from the residence of the husband at some improbable distance in time and space from the wife" (*Matter of Gray v Rose, supra,* p 995). Respondent admitted, at the hearing, that the mother met with her husband at some time while respondent was living with her, possibly in May, 1973, and respondent did not know whether the mother had sexual intercourse with the husband during this period. ¶ We remit this matter for further findings of fact with regard to the issue of access. If, after the new hearing, the court determines that respondent sustained his burden of proof as to the paternity of the child, the court should address itself to the issue of whether respondent took sufficient steps "to plan for the future of the child" (see Social Services Law, § 384-b, subd 7, pars [a], [c]; see, generally, *Matter of Leon RR,* 48 NY2d 117; *Matter of Orlando F.,* 40 NY2d 103). Adequate review is not possible on this appeal since the Family Court made no findings of fact on that issue. Mollen, P. J., Titone, O'Connor and Weinstein, JJ., concur.